¶ 29 The majority concludes, and I agree, that appellee failed to present competent, credible evidence showing that appellant knowingly engaged in a pattern of conduct that would cause her to believe that appellant would cause her physical harm or mental distress. However, because I disagree with many of the observations included in the majority's opinion, I concur in judgment only.
 {¶ 30} In the case at bar, there was testimony from another employee that she informed appellee that appellant had told her that "Carrie [appellee] is the reason that innocent people like him go to jail. She needs to be shot." In that same conversation, the employee claimed to have recounted prior incidents to appellee where appellant had stated that appellee "need[ed] to be put in her place" and that she was "a bitch and [had] it out for [him]." She also told appellee that appellant "had "flipped the finger" to her and said that he wanted to "blow up" buildings on the property. The witness further indicated to appellee that appellant had expressed hatred towards appellee and had mentioned that he possessed firearms.
 {¶ 31} Technically, there was only one actual threat directed toward appellee, the suggestion that she ought to be shot. The remainder of appellant's alleged statements were either not direct threats, were aimed at the workplace in general, or were simply expressions of hatred.
 {¶ 32} Nevertheless, any suggestion of violence in the workplace, even in the context of immature grousing or inappropriate joking must be taken seriously. Moreover, appellee was justified in believing that, as appellant's supervisor, she played a featured role in appellant's scenario of frustration and revenge.
 {¶ 33} While I agree that only one actual threat was known to appellee when she filed her complaint, I take issue with the majority's conclusion that this statement did not qualify under the statute because a third party relayed it to appellee. In other words, the majority believes that appellee had to present evidence of a direct or face-to-face confrontation with appellant to properly support her petition.
 {¶ 34} There is absolutely nothing in R.C. 2903.21.1 requiring proof that the respondent had direct or face-to-face contact with the petitioner. Rather, the petitioner is only required to prove that the respondent knowingly engaged in a pattern of conduct that caused the petitioner to believe that the respondent would cause her either physical harm or mental distress.
 {¶ 35} Stalkers engage in psychological warfare, which by its nature is devious, insidious, and subtle. Veiled references to third parties of dire consequences to the victim are stock-in-trade to such perpetrators. While such actions may be more difficult to prove than direct threats, the trial court should not be precluded from considering such third-party incidents as appropriate evidence. This of course presumes that such evidence comports with the rules of evidence.
 {¶ 36} To hold otherwise would defeat the purpose of R.C. 2903.21.4. This civil statute was enacted to fill the void left by the menacing by stalking, menacing, and aggravated menacing criminal statutes. With a stalking civil protection order, the court can now take proactive measures to immediately protect the victim instead of waiting until there are actual direct or face-to-face incidents of threatening behavior.Lindsay v. Jackson (Sept. 8, 2000), 1st Dist. Nos. C-990786 and A-9905306, 2000 WL 1268810, at 2.
 {¶ 37} The majority acknowledges that for a trial court to issue a stalking civil protection order the petitioner only needs to prove her allegations by a preponderance of the evidence. That being said, it appears that they have nevertheless confused the civil standard applicable to R.C. 2903.21.1, as referenced in R.C. 2903.21.4, with the criminal standard usually applicable to R.C. 2903.21.1. Specifically, they conclude that appellant's threat that appellee "needs to be shot," did not even constitute a single incident because it was indirectly relayed to appellee.
 {¶ 38} The logic in Jackson precludes such an interpretation of R.C. 2903.21.4. R.C. 2903.21.4 permits a petitioner to obtain a stalking civil protection order if she establishes that the respondent engaged in conduct constituting menacing by stalking as defined by R.C. 2903.21.1. And, even though R.C. 2903.21.1 is a criminal statute with a beyond a reasonable doubt standard requirement, that standard is reduced when R.C. 2903.21.1 is addressed in reference to R.C. 2903.21.4. Under that circumstance, the standard for proving menacing by stalking is a preponderance of the evidence.
 {¶ 39} What that means is, in the same sequence of events, a respondent could be found to have violated R.C. 2903.21.1 in relation to a stalking civil protection order, but not be guilty of R.C. 2903.21.1 as a criminal offense. The reason being is that there are two standards of proof for R.C. 2903.21.1, depending on the context.
 {¶ 40} Further, as the court in Jackson noted, R.C. 2903.21.4 is a remedial civil statute and is to be construed liberally to achieve the desired result. Jackson at 5. See, also, R.C. 1.11 ("Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice."). In contrast, R.C. 2903.21.1, in its criminal context, must be construed in favor of the defendant. For that reason, I would conclude that the single incident of which appellee was aware constituted a single threatening incident; one whereby appellee could conclude that appellant would cause physical harm or cause mental distress to her. Unfortunately, R.C. 2903.21.4 requires two such incidents.
 {¶ 41} The majority, relying on Jackson, also focuses on the point that there was no testimony of mental distress. In Jackson, the petitioner testified that she and her daughter were afraid of the respondent. The court in Jackson concluded that that while this evidence was not sufficient to demonstrate mental distress, it was sufficient for the court to infer fear of physical harm.
 {¶ 42} Here, appellee indicated she was upset and took appellant's remarks seriously. As was the case in Jackson, however, "[w]hile the evidence was undeniably thin on that issue, * * * it was sufficient to meet the preponderance-of-the-evidence standard, particularly given the remedial goal of the statute." Jackson at 5. Mental distress does not have to be shown if fear of physical harm is demonstrated as the statute is written in the disjunctive not the conjunctive. Tuuri v. Snyder, 11th Dist. No. 2000-G-2325, at 4, 2002-Ohio-2107.
 {¶ 43} My concurrence focuses on the fact that there was evidence of only a single comment which specifically targeted appellee, not that the incident itself was insufficient. I would agree that the other remarks did not threaten or focus on appellee. Instead, the latter incidents related to the work place in general. As a result, there was no pattern of conduct established that specifically referenced appellee.
 {¶ 44} Finally, I feel compelled to comment that it was appellee's own supervisor who launched the investigation, not appellee. Second, today's headlines give both employees and employers ample reason why any incident that may constitute a warning signal of impending violence should be reported and investigated. Conversely, any employee who engages in such hyperbole has to presume that his or her remarks will very likely be passed along to, and acted upon by, responsible management.
 {¶ 45} Thus, I reluctantly concur in judgment only.